CENTER FOR DISABILITY ACCESS
Raymond G. Ballister, Jr. SBN 111282
Mark Potter, Esq. SBN 166317
9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385
(888) 422-5191 fax
mark@potterhandy.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Larry Singer**, | Case: 8:11-cv-00427-DOC (MLGx) |
| Plaintiff, | **Plaintiff's Opposition to the Motion for Summary Judgment/Summary Adjudication of Live Nation** |
| v. | |
| **Live Nation Worldwide, Inc.**, a Delaware Corporation, dba Verizon Wireless Amphitheatre; and Does 1-10, | **Date:** January 23, 2012 **Time:** 8:30 a.m. **Ctrm:** 9D |
| Defendants. | Honorable Judge David O. Carter |

## I. THE MOTION IS UNTIMELY AND THE
## DEFENSE FAILED TO MEET AND CONFER

Pursuant to Central District Local Rule 7-3, the defense was required to meet and confer with plaintiff's counsel "to discuss thoroughly" the substance of any contemplated motion. Additionally, this conference was to take place at least ten days prior to the filing of the motion. *Id*. The defense failed to do this. The defense sent a letter dated December 19, 2011 (exhibit 2) to Mr. Potter—who was on vacation—and then filed its motion in December 23, 2011. No phone call. No discussion. No meeting. *See* Exhibit 1 (Potter Dec), paragraph 2. Not only did defense counsel fail to comply with Local Rule 7-3, he seeks to mislead the Court by

Complaint

declaring compliance with Local Rule 7-3 in his moving papers but carefully omitting the date of this supposed conference of counsel as required by Local Rule 7-3. Furthermore, timing the filing of this motion so that plaintiff's counsel had one week – the last week in December – to file an opposition lacks professional courtesy and underscores the untimeliness of this filing. This Court should not reward this behavior and should deny the motion as untimely and improperly filed. Given the holiday season, plaintiff's counsel has had one day to work on this opposition brief.

## II. DEFENSE COUNSEL'S RANT AGAINST ADA CASES AND ADA PLAINTIFFS IS TIRESOME AND UNPROFESSIONAL

The defense "introduces" its memorandum of points and authorities with several paragraphs attacking ADA cases in general and then calling the current case a "classic example of abusive ADA litigation." Defense Brief, p. 1, line 3 – p. 2, line 10. Plaintiff's counsel has seen this attack before. In fact, in every case that defense counsel has with plaintiff's counsel, defense counsel has felt it necessary to share the *same* criticisms (verbatim) and defense counsel has determined that every case is a "classic" example of abusive litigation. It becomes tiresome to address these comments in every case. They are not relevant. They do little except to diminish everyone involved.

Recently, one federal judge took Mr. Hurley and Mr. Chilleen to task for identical claims. In *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953, 957 (C.D. Cal. 2009), the defense filed the same brief language and Judge Stephen Larson noted that, "defendant begins its opposition with an indignant screed against litigation brought under the ADA and other disability access laws, both in general and particularly focusing on litigation brought by plaintiff and her counsel." *Id.* at 957. Judge Larson, who had presided over the entire case, scolded defense counsel: "Not only are these attacks on the scruples and ethics of plaintiff and her counsel inappropriate in tone, they are wholly unsupported in substance." *Id.* at 958. Judge

Complaint

Larson also noted that, "These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA and California statutes." *Id*. Not only did Judge Larson note this troubling trend but he examined the substance of those claims in his case: "In this case, however, a careful examination of the record reveals that defendant's counsel—not plaintiff's—has acted unprofessionally and generated needless expenses for both parties in the case." *Id*. at 959. Yet, despite these comments, defense counsel continues to submit his boilerplate indictment of all things ADA. These attacks are unprofessional and unworthy of court or counsel.

### III. THE DEFENSE HAS NOT PROVIDED SUFFICIENT EVIDENCE TO DISPENSE WITH THE CLAIM FOR INJUNCTIVE RELIEF

The accessible seating location at the Verizon Wireless Amphitheatre is found at the orchestra section. *See* Dec of Gray, p. 1, lines 8-9. According to Mr. Gray, Live Nation has a policy in place to provide wheelchair users with the lowest price available to non-disabled patrons. *Id*. at lines 9-10. The defense does not submit a copy of this policy in support of the motion for summary judgment. The defense has not submitted a copy of this policy as part of its initial disclosures. There is no record before this Court that would permit any conclusions about the adequacy, scope or effectiveness of this supposed policy. We do not even know if the policy is formal and written or merely an informal word of mouth policy. Mr. Gray shares his subjective opinion that: "if Plaintiff were to request a special discounted lawn ticket being offered at $10, then Live Nation would honor that price and Plaintiff would be seated in the accessible orchestra section." *Id*. at lines 11-13. But this is simply not true. Mr. Singer's actual experience was quite different. Mr. Singer read about a special $10 price to attend the Aerosmith concert that was being held at the Verizon Wireless Amphitheatre. Exhibit 3 (Singer Dec), paragraph 4. He

1    called the Live Nation box office to buy the $10 ticket and was told by an "April"

2    who worked for Live Nation that the $10 tickets were not available to wheelchair

3    users. *Id*. He was told that wheelchair users were already offered a good deal by

4    getting orchestra level tickets at around $40 when they normally sell for around

5    $200. *Id*. He explained that he understood this but wanted to also enjoy the $10

6    price and was told that he could not because this was only for lawn seating locations

7    and there were no wheelchair accessible areas in that section. *Id*. at paragraph 5.

8         Although we do not know what shape or form this supposed ticket policy

9    comes in, we do have evidence that the policy is vague enough or insufficient

10   enough to avoid the type of discrimination faced by Mr. Singer. The sole evidence

11   submitted by the defense is a two paragraph declaration from a Mr. Gray that

12   amounts to nothing more than a self-serving, conclusory sharing of his opinion

13   about the effect of the policy . . . an opinion that has proven faulty in light of an

14   actual experience by Mr. Singer. This is insufficient evidence to moot the claim for

15   injunctive relief.

16        A claimed remedy "might become moot if subsequent events make it

17   absolutely clear that the allegedly wrongful behavior could not reasonably be

18   expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*

19   *(TOC), Inc.*, 528 U.S. 167, 170 (2000). The party asserting mootness, however, has

20   "the heavy burden of persuading the Court that the challenged conduct cannot be

21   reasonably expected to recur." *Id*. Here, the burden is even more onerous for the

22   defense because it is raised in the context of a summary judgment motion where all

23   facts are construed in a light most favorable to the plaintiff.

24        Because Live Nation has the burden of proof as the moving party on the issue

25   of mootness, it cannot obtain summary judgment on that issue unless it presents

26   evidence so compelling that no rational jury would fail to award judgment for the

27   defense. *See*, *e.g.*, *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st

28   Cir.1998) ("The party who has the burden of proof on a dispositive issue cannot

4

attain summary judgment unless the evidence that he provides on that issue is conclusive."); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."). Thus, in order to establish – by way of summary judgment motion – that Mr. Singer's sought for remedy of an injunction is moot, Live Nation must establish beyond any reasonable possibility that the same incident will not happen again. In a very recent ruling, a district court noted that where a defendant is not following its own access policies or where the policies are vague or contradictory or where the defendant could rescind its own policies at any time, an injunction remains necessary. *Moeller v. Taco Bell Corp.*, --- F.Supp.2d ---, 2011 WL 4634250 (N.D. Cal. Oct. 5, 2011). In the present case, the defense has not even given us a copy of this alleged policy that renders moot the need for an injunction. The weighty burden held by the defense in trying to moot a requested remedy and on summary judgment has not been met by Mr. Gray's conclusory two paragraph declaration.

## IV. MR. SINGER DID NOT HAVE TO BUY A TICKET
## TO STATE A CLAIM FOR DAMAGES

This lawsuit is predicated upon the idea that Live Nation discriminated against persons in wheelchairs with respect to the July 2010 Aerosmith concert. Non-disabled persons could pay $10 and attend the Aerosmith concert. The only persons who could not participate in this offer were wheelchair users. They were forced to pay the higher price of $40. The defense argues that the plaintiff was required to buy the more expensive ticket before he had standing to sue for discrimination. Defense Brief, p. 9, line 3. This argument cannot withstand scrutiny. If the defense theory of the law were correct, Live Nation could charge

Complaint

1    non-disabled persons $10 and wheelchair users $1,000,000 for access to the same
2    concert and no wheelchair user would have standing unless they first ponied up the
3    $1,000,000 and purchased a ticket. This is not the law.

4        The defense argument that the plaintiff does not have standing is based on
5    its interpretation of three cases: *Angelucci v. Century Supper Club*, 41 Cal.4th 160
6    (2007); *Surrey v. TrueBeginnings*, 168 Cal.App. 4th 414 (2009) and *Orloff v.*
7    *Hollywood Turf Club*, 110 Cal.App.2d 340 (1952). But the defense has
8    misconstrued these cases.

9        First, with respect to the oldest of the cases, *Orloff*, the plaintiff was ejected
10   from a racetrack and was told he would not be admitted in the future. He did not sue
11   for the actual ejection but sued for all the days the track was open thereafter "even
12   though he had not personally appeared at the track or purchased a ticket or been
13   ejected on any of such days." *Orloff*, 110 Cal. App. 2d at 342. The court found that
14   no claim was stated and reasoned: "Surely, it must be regarded as obviously plain
15   that if an authorized agent of the defendant had made the declaration, here
16   attributed to the defendant, to a person not at the track and who had never sought
17   admission thereto, but stated he intended to seek admission, he would not be
18   entitled to recover damages based upon the declaration alone." *Id.* at 344. The
19   court found that no claim could be stated under such speculative conditions and
20   that the plaintiff had to actually show up and present himself seeking admission
21   before he could state a claim. In the present case, the plaintiff attempted to buy the
22   $10 ticket. He argued with the box office. He tried to buy the ticket. He was refused.
23   He has standing. Nothing in *Orloff* provides authority that the plaintiff had to buy
24   the more expensive ticket before having standing.

25       Both *Angelucci* and *Surrey* dealt with gender discrimination. In *Angelucci*, the
26   plaintiffs were men who had paid for entrance to night clubs but were suing the
27   night clubs for discrimination because women got to pay a lower admission price.
28   The trial court granted the club's motion for summary judgment on the basis that

the men had not *demanded* equal treatment. *Angelucci*, 41 Cal. 4th at 167. The California Supreme Court reversed the decision. Because the men had paid the price of admission, the only question before the court was whether they had to demand equal treatment to have standing. The court was not faced with a situation where the plaintiffs had decided not to buy admission and, therefore, there was no discussion about that issue. The *Angelucci* court held that, "Nothing in our discussion of the legal issues suggested the Act is not violated and an injury does not occur unless the victim of discrimination not only tenders the price of admission but also demands equal treatment and is refused." *Id*. at 177. But in the present case, the plaintiff went further than the California Supreme Court required and demanded equal treatment. He demanded that he be treated equally and be permitted to pay $10 for admission and was refused. If *Angelucci* is to be applied to the facts of the current case, it supports standing.

In *Surrey*, the plaintiff was browsing on-line and noted that defendant TrueBeginnings online matchmaking service charged different prices to men and women. He sued. *Surrey*, 168 Cal.App.4th at 417. The trial court granted TrueBeginnings motion for summary judgment, concluding that the plaintiff "lacked standing to sue under the Unruh Act or the Gender Tax Repeal Act because he had never requested or paid for TrueBeginnings' services." *Id*. The appeals court upheld the decision and noted that, "[s]ince Surrey did not attempt to subscribe to TrueBeginnings' services, his interest in preventing discrimination is arguably no greater than the interest of the public at large." *Id*. at 418-419. But the facts in the present case are quite different. Mr. Singer did request and did attempt to buy the $10 tickets. He is differently situated than the public at large. He was personally aggrieved because he did not merely note the price discrepancy but attempted to obtain the $10 ticket, demanded equal treatment and was refused. The argument that he had to engage in the futile gesture of buying a more expensive ticket that he

7

Complaint

did not want is contrary to the ADA (see 42 U.S.C. § 12188(a)(1)) and not required by any cases cited by the defense.

## V. THERE IS NO BASIS TO "DISMISS" THE STATE CLAIMS: THE COURT SHOULD EITHER EXERCISE SUPPLEMENTAL JURISDICTION OR REMAND

The defense has moved, in the alternative, for the court to dismiss the state claims if it finds that the federal claim is moot. Defense Brief, p. 10, lines 18-20. When the federal claims are dismissed from the case, the District Court has discretion whether to maintain its supplemental jurisdiction over the state claims or dismiss them. *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991). The justification underlying the decision whether to maintain supplemental jurisdiction or dismiss a case, "lies in considerations of judicial economy, convenience and fairness to litigants . . . ." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, (1966). In fact, the Courts have recognized that judicial economy is the "essential policy behind the modern doctrine of pendent jurisdiction" and it supports "the retention of pendent jurisdiction in any case where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Id.*

In the present case, the principles of economy, convenience and fairness militate towards maintaining supplemental jurisdiction – even if the Court finds that the federal claim has been rendered moot. First, this case is in an advanced stage. The pretrial conference is just three months away. Sending this case back to state court and having the parties essentially start over is unfair and a duplication of judicial effort. The parties have exchanged initial disclosures, prepared joint reports, conducted discovery, held a scheduling conference and now fought the legal issues via this motion. Being sent back to state court to start over with a Case Management Conference will necessitate delay and duplication of effort. Also, it

Complaint

should be noted that there is a fairness argument here. The plaintiff filed this case in state court. The defense removed it and sought out the federal forum.[1]

Finally, if this Court does decide that the federal claim is moot and does decline to exercise supplemental jurisdiction, the appropriate move is to remand the case back to the Orange County Superior Court from whence it was removed rather than a dismissal.

## VI. CONCLUSION

The plaintiff respectfully requests the defense motion be denied.

Dated: January 2, 2012                     CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

_____

[1] Defense counsel has a standard practice of removing all of the plaintiff's ADA cases filed in state court to federal court, then attempting to moot the federal claims and dismiss or remand. It is unclear what the reason for this is . . . other than standard delaying tactics. But it is disingenuous for the defense to purposefully seek out the federal forum and then argue that the district court should not exercise jurisdiction.

Complaint